1  DHEERAJ K. SINGHAL (SBN 217299)
   ROBERT M. GILCHREST (SBN 134254)
2  **DCDM LAW GROUP, PC**
3  35 N. Lake Avenue, Suite 280
   Pasadena, California 91101
4  Telephone:  (626) 689-2407
   Facsimile:   (626) 689-2205
5       dksinghal@dcdmlawgroup.com

6
   Attorneys for Plaintiff
7  ASSIGNEE OF VINAMEX SUPERMARKET
   BANKRUPTCY CLAIMS LLC
8

9                **UNITED STATES BANKRUPTCY COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11                    **SANTA ANA DIVISION**

12

| | |
|---|---|
| In re: | Case No. 8:15-bk-13189-MW |
| VINAMEX SUPERMARKET, LLC, | Chapter 11 |
| Debtor. | Adv. No. |
| ASSIGNEE OF VINAMEX SUPERMARKET BANKRUPTCY CLAIMS LLC, | **COMPLAINT FOR: BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; CONVERSION; AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS; MONEY HAD AND RECEIVED; AND TURNOVER.** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| vs. | **[11 U.S.C. §§ 542, 544, 548, and 550]** |
| A&J CAPITAL INVESTMENT, INC., a California corporation, PAN-ASIA BUSINESS CONSULTING LTD., a foreign company, RICHARD CHHOR, an individual, PETER NGUYEN, an individual, and DOES 1-10; | Judge:    Hon. Mark S. Wallace<br>Place:    Courtroom 6C<br>411 West Fourth Street<br>Santa Ana, CA 92701-4593 |
| Defendants. | |

Plaintiff Assignee of Vinamex Supermarket Bankruptcy Claims, LLC (the "Vinamex Assignee"), for its claims against defendants A&J Capital Investment, Inc., Pan-Asia Business Consulting Ltd., Richard Chhor and Peter Nguyen avers as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b) and (e) in that this is a civil proceeding arising in or related to a case under Title 11 of the United States Code (the "Bankruptcy Code"). This is a core proceeding pursuant to 28 U.S.C. §157(b) and (c):

a.  All of the claims in this Complaint are related to the Chapter 11 case of *In re Vinamex Supermarket, LLC*, pending as Case No. 8:15-bk-13189-MW (the "Bankruptcy Case") in the Court, and are, therefore, within the Court's original jurisdiction under 28 U.S.C. §1334(b).

b.  Some of the claims in this Complaint address property of the Debtor's estate that is the subject of avoidance claims and property of the estate administered in the Bankruptcy Case and, hence, such claims are within the Bankruptcy Court's exclusive jurisdiction under 28 U.S.C. §§1334(e) and 157(b).

c.  The claims in this Complaint arise under 11 U.S.C. §§ 542, 544, 548, and 550 and applicable California state law.

d.  The claims in this Complaint that arise under 11 U.S.C. §§ 542, 544, 548, and 550 are core proceedings within the meaning of 28 U.S.C. §157(b)(2) because such claims arise under Title 11 of the United States Code.

e.  Some of the claims in this Complaint arise under California state law, and, hence, are non-core claims within the meaning of 28 U.S.C. §157(c)(1); such claims arise under the same nucleus of operative facts that are set forth in the core claims.

f.  Plaintiff does not consent to the Bankruptcy Court's entry of a final judgment in this case and requests a trial by jury of all issues that are triable to a jury in this case by the District Court.

2.      This adversary proceeding is brought pursuant to Rule 7001, *et seq*., of the Federal Rules of Bankruptcy Procedure.

3.     Venue in this Court is proper pursuant to 28 U.S.C. §1409 as this adversary proceeding arises in and relates to a case under the Bankruptcy Code that is pending in this District.

## THE PARTIES

4.     Plaintiff Assignee of Vinamex Supermarket Bankruptcy Claims, LLC (the " Vinamex Assignee" or "Plaintiff") is a limited liability company organized under the laws of the State of California. Plaintiff, at all times relevant hereto, maintained its principal place of business in Los Angeles, California, California. Plaintiff has standing to bring the claims asserted in this Complaint as a result of the following events.

a.  In the Third Amended Plan dated April 4, 2016, the Debtor and Debtor in Possession Vinamex Supermarket, LLC ("Debtor") stated that it intended to sell all its litigation claims except those defined to be the "Carved Out Claims."

b.  On or about June 14, 2016, the Debtor entered into a Purchase and Sale Agreement (the "Vinamex PSA") with Rosa Duong ("Duong") through which, subject to the confirmation by the Court, Debtor sold, and Duong purchased, all litigation claims of Debtor except those claims defined as the "Carved Out Claims." The Vinamex PSA required Duong to pay $50,000 for the sold litigation claims (the "Sold Litigation Claims).

c.  On June 27, 2016, the Court entered an order that, among other things, confirmed Debtor's Third Plan dated April 4, 2016, as Amended, as modified by the modifications in the Debtor's Notice of Non-Material Modifications to Debtor's Third Amended Plan Dated April 4, 2016 as Amended (the "Non-Material Modifications).

d.  On August 24, 2017, the Liquidating Trustee was paid $50,000 for the Sold Litigation Claims.

e.  On or about October 4, 2016, Duong entered into an Assignment Agreement with the Assignee of Vinamex Bankruptcy Claims, LLC ("Assignee of Vinamex") through which Duong assigned to the Assignee of Vinamex all the rights obligations and duties under the Vinamex PSA.

1     5.     Defendant A&J Capital Investment, Inc. ("A&J Capital") is a corporation organized
2  and existing under the laws of the State of California. A&J Capital's registered office is located at
3  1609 W. Valley Boulevard, Suite 328, Alhambra, California.

4     6.     Defendant Pan-Asia Business Consulting Ltd. ("Pan-Asia") is a company organized
5  under the laws of the Hong Kong Special Administrative Region. Pan-Asia is qualified to do business
6  in the State of California. On March 26, 2014, Pan-Asia entered into a Management Agreement with
7  Vinamex Supermarket, LLC ("Vinamex") through which the parties agreed that disputes related to the
8  agreement would be resolved in the County of Los Angeles, State of California.

9     7.     Defendant Richard Chhor is an individual who resides in the County of Los Angeles,
10  State of California.

11     8.     Defendant Peter Nguyen is an individual who resides in the County of Los Angeles,
12  State of California.

13     9.     Plaintiff is informed and believes, and therefore alleges, that Does 1 through 10
14  (collectively referred to as the "Doe Defendants"), are or were affiliated with A&J Capital, Pan-Asia,
15  Chhor or Nguyen, or are in some manner responsible or legally liable for the events, actions,
16  transactions, and circumstances alleged herein. Plaintiff will seek leave of the Court to amend this
17  Complaint after discovery to state the true names and capacities of these entities or any other Doe
18  Defendants.

19              **THE FACTS**

20              **Introduction**

21     10.     This lawsuit is the result of the flagrant breaches of contract and fiduciary duties by
22  two classes of managers of Vinamex Supermarket, LLC ("Vinamex"), a company formed to build and
23  operate a supermarket and other retail space in Garden Grove, California. During construction of the
24  supermarket, Class A Managers Chhor and Nguyen and Class B Managers A&J Capital and Pan-Asia
25  each owed Vinamex fiduciary duties of care, good faith and utmost loyalty. Consistent with those
26  duties, Chhor and Nguyen had the responsibility to act in good faith, in a manner in which each
27  Defendant reasonably believed was in the best interest of Vinamex and its members, and with such
28  care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under

similar circumstances. Rather than properly discharging their fiduciary and other duties in good faith,

Chhor and Nguyen, instead, engaged in series of acts and omissions, including but not limited: (a)

mismanaging the construction of the supermarket resulting in significant construction cost overruns;

(b) misappropriating Vinamex funds earmarked to cover the cost of construction for their own

personal use; (c) engaging in self-dealing transactions, including but not limited to establishing

business enterprises to enter into lease arrangements with Vinamex in violation of Vinamex's

operating agreement; and (d) using Vinamex funds to purchase equipment and material for the

unlawful business enterprises.

11.     A&J Capital and Pan-Asia owed Vinamex and its members the same duties as Chhor

and Nguyen. In addition, A&J Capital and Pan-Asia had the responsibility: (a) to manage and monitor

the operations of the business, property and affairs of Vinamex, including the construction of the

supermarket; (b) to monitor the disbursement of funds from the bank accounts of Vinamex; (c) to

review and approve budgets; and (d) to train and manage their personnel to properly discharge the

responsibilities of A&J Capital and Pan-Asia.

12.     Rather than properly discharging their fiduciary and other duties in good faith, A&J

Capital and Pan-Asia, among other things: (i) failed to exercise adequate management and oversight

over the use of funds from Vinamex's bank accounts; (ii) closed a blind eye to their duty to exercise

adequate management and oversight control over the construction of the supermarket by, among other

things, ensuring that construction of the supermarket was within the budget for construction, that the

funds spent were being used for the supermarket, and that the contractors were properly licensed; and

(iii) failed to exercise adequate management and oversight control over the activities of Chhor and

Nguyen, including but not limited to their use of funds from Vinamex's bank accounts; (iv) failed to

train their employees on how to follow the policies and procedures required in writing to ensure that

funds earmarked for construction were being used only for construction, resulting in at least one

employee signing blank dual signature checks without a clue as to the amount or use of funds taken

from Vinamex's bank accounts through the dual signature checks.

13.     As a direct result of the tortious conduct of the A&J Capital, Pan-Asia, Chhor and

Nguyen during construction, funds earmarked to be use for the start-up operations of the supermarket

1  were consumed during construction resulting in the supermarket shutting its doors within five months

2  of opening and Vinamex filing for bankruptcy protection. This lawsuit is brought to hold these Class

3  A and Class B Managers accountable for their tortious conduct resulting in the failure of what

4  otherwise was a supermarket slated to serve the unique needs of the Vietnamese and Mexican

5  community in Garden Grove, California.

6  <u>**The Formation, Funding And Management Structure Of Vinamex**</u>

7      14.    By way of background, Vinamex was formed in April 2013 by Chhor, Nguyen and

8  Rosa Duong ("Duong") to develop, own and operate an Asian and Mexican supermarket and to lease

9  other retail space in Garden Grove, California. In June 2013, Duong, Chhor and Nguyen (collectively

10  the "Original Partners") entered into a partnership agreement regarding the ownership, funding,

11  construction and management of Vinamex. On September 27, 2013, the Original Partners caused

12  Vinamex to enter into a lease to operate the Garden Grove Supermarket and to sublease space to other

13  retail stores at 12081 Brookhurst Street, Garden Grove, California.  The lease term commenced on

14  December 1, 2013.

15      15.    Chhor knew Qingfu "Frank" Xu ("Xu") before becoming an Original Partner. Shortly

16  after the Original Partners entered the partnership agreement, Chhor introduced Duong and Nguyen to

17  Xu for purposes of discussing obtaining EB-5 Program funding to be used to build the Supermarket

18  and other retail space, purchase the initial inventory for, and provide the initial working capital for the

19  operations of the Supermarket (the "Project").

20      16.    The EB-5 Immigrant Investor Program (the "Program") was created by the

21  Immigration Act of 1990 to stimulate the U.S. economy through job creation and capital investment

22  by foreign investors. Under the Program, entrepreneurs (and their spouses and unmarried children

23  under 21) are eligible to apply for green card (permanent residence) if they: (a) make the necessary

24  capital investment in a commercial enterprise in the United States; and (b) the enterprise contemplates

25  creating or preserving 10 permanent full-time jobs for qualified U.S. workers.

26      17.    Xu was familiar with  Sino-US Investment and Management Consulting Limited

27  ("Sino-US Investment") before June 25, 2013. On June 25, 2013, Sino-US Investment issued a letter

28  of intent (the "LOI") that, among other things, described the Project, the funding of the Project, and

the management of the Project. The LOI generally describes the Project as an opportunity to invest in an Asian and Mexican supermarket, including: (a) a 31,200 sq. ft. first floor space to house the Supermarket and other retail stores; (b) a 9,500 sq. ft. second floor space to house retail stores; (c) interior design and buildout of the facility; and (d) operations of the Supermarket.

18.     The LOI generally describes the funding of the Project to call for Sino-US Investment to bring in up to $3.5 million investor funding and for the Original Partners to show the ability to commit $1.5 million to the Project. And the LOI generally describes the management of the Project to require Sino-US Investment to appoint an investment manager to: (a) manage the disbursement of EB-5 funds; and (b) exercise the rights of the preferred equity members as described in the operating agreement of Vinamex.  One Yu Liangying signed the LOI on behalf of Sino-US Investment. Duong and Chhor signed the LOI on behalf of Vinamex.

19.     For its funding raising efforts, Sino-US Investment (or its designee) was entitled to 10% of the net operating profit and 10% equity in Vinamex under the LOI. In addition, Sino-US Investment (or its designee) was entitled to a non-refundable origination fee of 1% of the EB-5 equity brought in. Sino-US Investment (or its designee) also was entitled to require Vinamex to cover the legal fees and related costs incurred to prepare and review the legal documents needed to effectuate the EB-5 transaction. But that is not all to which Sino-US Investment was entitled under the transaction. Under the LOI, each investor was required to pay Sino-US Investment $45,000 for services performed overseas.

**The Management Structure Of Vinamex And The Obligations Of The Managers**

20.     To effectuate the ownership and management structure contemplated by the LOI, Xu caused a law firm to prepare a First Amended and Restated Operating Agreement for Vinamex dated as of June 7, 2013 but entered on January 10, 2014 (the "Operating Agreement"). The Operating Agreement superseded the partnership agreement previously entered by the Original Partners.

21.     The Operating Agreement provided for Class A Members and Class B Members. The Class A Members consisted of the Original Partners and Goldstone Management, LLC ("Goldstone"). Xu is the sole member and manager of Goldstone. The Class B Members consisted of the Chinese nationals who sought to obtain lawful permanent residency status through their EB-5 investment.

22.     The Operating Agreement provided that Vinamex was to have two managers: a Class A Manager and a Class B Manager. The Operating Agreement designated Vinamex Management, LLC ("Vinamex Management") as the Class A Manager. Vinamex Management was co-owned by Chhor, Nguyen, Rosa Duong and Pier Duong.  The Operating Agreement provided that the Class B Manager would be designated at a future date.

23.     The Operating Agreement prohibits a Manager (and the Manager's affiliates, employees or agents) from directly or indirectly engaging in any transaction (including borrowing money from, or entering into a lease arrangement with Vinamex) unless: (a) the material terms and conditions of the transaction are disclosed to and approved by each class of Members; and (b) the transaction is not expressly prohibited by the Operating Agreement. The Operating Agreement provided that each Manager owes Vinamex and Vinamex's members "the fiduciary duties of loyalty and care, and is bound by the covenants of good faith and fair dealing."

24.     On March 26, 2014, Vinamex and Pan-Asia entered into a Management Agreement through which Pan-Asia: (a) agreed to be designated as the Class B Manager under the Operating Agreement; and (b) separately agreed "to provide financial administrative and certain advisory services to [Vinamex]."  The administrative and advisory services that Pan-Asia agreed to provide Vinamex included but were not limited: (a) to "manage and monitor the operation of the business, property, and affairs of [Vinamex] in accordance with the Operating Agreement"; (b) to "monitor the disbursement of funds from [Vinamex's] bank accounts"; (c) to review and approve budgets; and (d) to "train and manage [Pan-Asia's] employees with regard to, and enforce, the rules and policies, as defined in the [Management] Agreement."

25.     For its management services, the Management Agreement entitled the Class B Manager "to compensation based upon the amount equal to $88,800 per year payable on a monthly basis…." And, the Management Agreement required the Class B Manager to "indemnify, defend and hold harmless [Vinamex] against and from any and all claims, damages, liabilities, causes of action and/or proceedings … brought against, suffered or incurred by [Vinamex] which arise out of, relate to or result from Class B Manager's gross negligence; reckless, willful or intentional misconduct; fraud; deceit; bad faith…."

26.     The Management Agreement authorized Pan-Asia to "delegate its functions, powers, discretions, privileges and duties under the Agreement or the Operating Agreement to any person including any of its affiliates…" On April 21, 2014, Pan-Asia entered into an agency agreement (the "Agency Agreement") through which it irrevocably delegated to A&J Capital Investment, Inc. ("A&J Capital") the "power to exercise and assume certain of the rights, powers, authority, and obligations of the Class B Manager under the Operating Agreement. Xu is the sole shareholder and the President and Chief Executive Officer of A&J Capital.

27.     The Agency Agreement required Pan-Asia to pay A&J Capital a consulting fee of $88,000 per annum payable monthly upon Pan-Asia's receipt of its compensation under the Management Agreement from Vinamex. Under the Operating Agreement, Pan-Asia remained responsible for any act or omission of such officer or employee or agent to which it delegated its rights and obligations.

**A&J, Chhor And Nguyen Disregarded the Aggregate Accounts Governance Agreement**

28.     As of April 23, 2014, Vinamex Management was the Class A Manager of Vinamex. As of April 23, 2014, A&J Capital was the Class B Manager of Vinamex. As permitted by the Operating Agreement, Vinamex Management delegated its management authority to Chhor and Nguyen. A&J Capital selected Ming Yu ("Yu") as the point-person for the Class B Manager.

29.     On April 23, 2014, the Class A and Class B Managers entered into an agreement describing the purpose and control over three bank accounts opened by Vinamex – the Cash Control Account (ending with 2306), the Revenue and Build-Out Operating Account ("Revenue Account") (ending with 2314) and the General Expense Operating Account (ending with 2264) (collectively, the "Aggregate Accounts Governance Agreement").

30.     Specifically, the Aggregate Accounts Governance Agreement confirmed the opening of a Cash Control Account initially to be used to deposit EB-5 funds by the Class B Member. Once all EB-5 funds were deposited, the Cash Control Account was to be used to hold funds for, among other things, capital improvements and member compensation.

31.     The Aggregate Accounts Governance Agreement also confirmed the opening of a Revenue Account initially to be used to receive funds from the Cash Control Account to pay

1  construction costs of the supermarket and retail space. Once construction was completed, the Revenue

2  Account was to be used to deposit all revenue generated by Vinamex.

3      32.    And the Aggregate Accounts Governance Agreement confirmed the opening of a

4  General Expense Operating Account to receive funds from the Revenue Account and to use those

5  funds to pay company operating expenses.

6      33.    The Aggregate Accounts Governance Agreement required one signature from the

7  Class A Manager and one signature from the Class B Manager on each check or other withdrawal

8  from the Cash Control Account and the Revenue Account. This dual signature requirement was

9  included in the Aggregate Accounts Governance Agreement to serve as a means for the Class B

10  Managers to monitor the expenditure of funds from both accounts by the Class A Manager. The Class

11  B Manager also had online access to both accounts 24/7.

12      34.    Between May 1, 2014 and December 31, 2014, approximately $3,808,964.00 was

13  deposited into the Cash Control Account by the EB-5 investors.  A&J, Chhor and Nguyen approved

14  the wire transfer of approximately $308,000 to Sino-US Investment directly from the Cash Control

15  Account.  A&J, Chhor and Nguyen further approved the transfer of the remaining $3.5 million to the

16  Revenue and Buildout Account, wiping out the Cash Control Account by February 2015.

17      35.    As noted previously, the business plan called for construction of the supermarket area

18  as well as retail space on the first and second floors. The business plan called for Vinamex to sublease

19  the retail space to subtenants. EB-5 funds and money contributed by the Class A Members were to be

20  used to cover these construction costs, to purchase of supermarket equipment and inventory, and to

21  cover start-up operating expenses.

22      36.    As noted previously, the Operating Agreement prohibited a Manager (and the

23  Manager's affiliates, employees or agents) from directly or indirectly engaging in any transaction

24  (including borrowing money from, or entering into a lease arrangement with Vinamex) unless: (a) the

25  material terms and conditions of the transaction were disclosed to and approved by each class of

26  Members; and (b) the transaction is not expressly prohibited by the Operating Agreement.

27

28

**Nguyen Rigged the Bidding Process to Select the General Contractor**

37.    Nguyen managed the bidding process for the architecture and construction services necessary to design and build the supermarket. Nguyen knew Ronny Luong, of ABC Art Builder Construction ("ABC Construction"). Nguyen had introduced and recommended ABC Construction to Duong.  Nguyen advised the Original Partners that ABC Construction had won the bid to be the general contractor to build the supermarket and retail space.  Nguyen managed the construction on behalf of the Class A Manager. Nguyen acknowledges that, during construction, he would often arrive at the supermarket site at 10am and leave between 4pm and 7pm. In his own words, Nguyen was regularly at the Project site because, "as the owner, you have to be there to see what construction is going on."

38.    To obtain payment for construction costs incurred, ABC Construction purportedly submitted draw requests to Chhor. Chhor then contacted the Class B Manager to arrange for the transfer of EB-5 funds to pay construction costs triggered by draw requests.

39.    These draw requests included budgets showing how the money was spent, copies of lien releases from the contractor, and copies of checks written to the subcontractors.

**A&J Capital Pays Lip Service To Its Monitor Obligations, Thereby Permitting The Fraud of Chhor and Nguyen To Go Undetected Until It Was Too Late**

40.    A&J Capital advertises itself as a leading commercial real estate and private equity investment management firm headquartered in Los Angeles.  A&J Capital boasts about managing the development of commercial properties, including at least one development consisting of a grocery store, restaurants and small retail stores.

41.    As noted previously, A&J Capital signed an Agency Agreement with Pan-Asia through which A&J Capital agreed to provide Vinamex various services, including but not limited: (a) to "manage and monitor the operation of the business, property, and affairs of [Vinamex] in accordance with the Operating Agreement"; (b) to "monitor the disbursement of funds from [Vinamex's] bank accounts"; (c) to review and approve budgets; and (d) to "train and manage [Pan-Asia's] employees with regard to, and enforce, the rules and policies, as defined in the [Management] Agreement." Between May and November 2014, A&J Capital arranged for over $3.8 million in EB-5 funds to be

1   deposited into Vinamex's Cash Control Account.  A&J Capital properly approved the payment of

2   over $300,000 to Sino-US. Beyond that, A&J Capital did little to properly discharge its obligation to

3   manage and monitor the business, property and affairs of Vinamex.

4        42.    The LOI required the use of EB-5 funds to be in accordance with an itemized budget.

5   The Agency Agreement required A&J Capital to review and approve budgets in order to safe-guard

6   the use of EB-5 funds. The Bank Accounts Governance Agreement required that funds to be used for

7   the build-out be transferred from the Cash Control Account to the Revenue Account.  Before

8   approving the transfer of funds between the two accounts, the Operating Agreement and Agency

9   Agreement required A&J Capital to independently assure itself that the funds would be properly used.

10       43.    Between May and November 2014, A&J Capital approved transfers of $3.5 million

11  from Vinamex's Cash Control Account to Vinamex's Revenue Account based on budgets fabricated

12  by Nguyen and Chhor and rubberstamped by A&J Capital. A&J Capital approved of over $2.1 million

13  from Vinamex's Revenue Account to ABC Construction's Account at Bank of the West based on

14  draw requests, a number of which were fabricated.

15       44.    Once A&J Capital approved the transfer of funds from Vinamex to ABC Construction,

16  Nguyen was free to use the funds in any way he saw fit. And he did so to the detriment of Vinamex.

17  **Chhor and Nguyen Crafted an Elaborate Scheme to Divert Millions of Dollars While A&J**

18  **Capital Blindly Approved Draw Requests**

19       45.    In late April 2014, Chhor and Nguyen submitted the First Draw Request to A&J

20  Capital.  The First Draw Request was supported by a number of lien releases and copies of checks

21  written to the sub-contractors.  The checks showed that the general contractor ABC Art Builder

22  Construction, Inc. had paid at least $645,000 to C-K Construction from a checking account number

23  027-718379 at Bank of the West.  Those checks had been doctored and were never cashed.

24       46.    Subpoenaed bank statements from Bank of the West included bank statements of

25  account number 027-718379 (the "8379 Account").  The account holder was not ABC Art Builder

26  Construction, Inc. To the contrary, the account belonged to one Emerald Union International LLC dba

27  Pacific United International ("Emerald Union").  That company's address on the bank statements was

28  4843 Doreen Ave, Temple City CA 91780-4140—Nguyen's home address.

47.     That fraud was just the beginning.  Chhor and Nguyen created fake construction invoices and forged signatures as well.  Chhor and Nguyen forged signatures of Ronny Luong, the owner of ABC Art Builder Construction.  Chhor and Nguyen forged the signatures of Rosa Duong to show that she approved many of the transactions.  Chhor and Nguyen forged the signatures for the owner of C-K Construction.

48.     The fraud did not stop there.  Chhor and Nguyen doctored bank statements of Emerald Union to make them appear as if they belonged to ABC Art Builder Construction, Inc.  Chhor and Nguyen also doctored Duong's bank statements to prove that $930,000 was paid from her bank account to ABC Art Builder Construction.

49.     Chhor and Nguyen went even further.  On June 30, 2014, Nguyen opened a checking account (ending with 5530) at Bank of the West under the name ABC Art Builder Construction (the "ABC Construction Account").  The signature card for the ABC Construction Account reflected a signature above Nguyen's name was nearly identical to Ronny Luong's distinctive signature.  Nguyen had the monthly bank statements mailed to his home residence located at 4843 Doreen Avenue, Temple City, CA 91780.  Over the course of six months between July 2015 and December 2015, Nguyen spent all $2.1 million, including many hundreds of thousands of dollars paid to himself and Chhor.

50.     Their elaborate scheme was designed to pin the tail of fraud on Duong.  From the outset, Chhor and Nguyen chose C-K Construction as the phantom contractor because C-K Construction is owned by Duong's relative.  Then, after they were being removed as members of Vinamex Supermarket, LLC, Chhor and Nguyen revealed Duong's doctored bank statements to prove that the true culprit was Duong.  These doctored bank statements were attached to the Third Amended Disclosure Statement that Court approved.

51.     To provide cover for the theft of hundreds of thousands of dollars and to show that they were being mindful of the EB-5 funds, Chhor and Nguyen agreed to waive their rights to compensation and instead agreed to take loans from Vinamex of approximately $3,000 per month to provide them with living money during the course of the construction.  The loans began in August 2014 and terminated in January 2015.  Chhor and Nguyen admit that those funds are owed to

Vinamex.  According to the Statement of Financial Affairs ("SOFA") [Docket No. 68], Chhor and Nguyen each owe at least $15,000 plus interest to pay back these loans.

52.    In addition to the many secret payments Chhor and Nguyen received from the ABC Account at Bank of the West, Chhor used his authority as a co-signer on the Revenue Account to give himself and Nguyen tens of thousands of additional dollars.  For example, Chhor and A&J Capital approved Check No. 1053 from the Revenue Account in the amount of $30,000 payable to Peter Nguyen, for "the purchase of smallware."  No receipts have been found to document what "smallware" was purchased for the benefit of Vinamex.

53.    A&J Capital turned a blind eye to how the funds were being spent and the quality of the construction.  If A&J Capital made site visits to fulfill their many responsibilities under the Agency Agreement and as Class B manager, they would have immediately realized that Chhor and Nguyen were not being truthful.

**Nguyen Uses Diverted EB-5 Funds To Start Businesses To Operate In Vinamex's Retail Space**

54.    Chhor concedes that, in December 2014, he learned that Nguyen was part owner in several businesses purporting to sublease retail space from Vinamex. The Operating Agreement required Nguyen to get pre-approval from each class of Managers of Vinamex before taking an ownership interest in these businesses. But Nguyen neither sought nor obtained pre-approval to do so. Apparently Nguyen admitted to Chhor that EB-5 funds deposited into the ABC Construction Account were used to do build-outs for these businesses and to purchase equipment and small-ware needed to open and operate the businesses.

**Chhor And Nguyen Form Cutie Burger, LLC In December 2014 And Divert Funds From Vinamex To Open The Restaurant.**

55.    Chhor concedes that, after he discovered Nguyen's ownership interest in certain subtenants, he and Nguyen formed Cutie Burger, LLC ("Cutie Burger") to be a subtenant of Vinamex and to operate a burger restaurant in the retail space. The Operating Agreement required Chhor and Nguyen to get pre-approval from each class of Managers of Vinamex before engaging in this transaction. But Chhor and Nguyen neither sought nor obtained pre-approval to cause Cutie Burger to engage in this transaction with Vinamex.

56.     Chhor and/or Nguyen opened a bank account for Cutie Burger and caused funds from a Vinamex account to be transferred to Cutie Burger's Bank of America account. Chhor and/or Nguyen used the misappropriated funds, among other things, to renovate space to operate Cutie Burger in the small business retail space at the Garden Grove Supermarket and to buy equipment, small-ware and food for the restaurant.

**Nguyen Misappropriates Deposits From Prospective Tenants.**

57.     Construction began in or about January 2014. Chhor concedes that, during construction, prospective subtenants approached Nguyen and him to inquire about renting retail space. According to Chhor, An Ky BBQ deposited $150,000 with Nguyen. A prospective tenant seeking to open a sandwich shop deposited $100,000 with Nguyen. Chhor acknowledges that those deposits never made their way to a Vinamex account. But Chhor admits that Nguyen used Vinamex funds to pay the subtenants' construction costs, equipment costs and other costs required to get the subtenants' businesses up and running. Chhor admits that the construction cost overruns were the result of Nguyen causing Vinamex to foot the bill for construction not contemplated by the business plan.

**Chhor And Nguyen Open Up Bank Accounts And Cause Funds Belonging To Vinamex To Be Held In The Accounts.**

58.     As noted previously, the Aggregate Accounts Governance Agreement prohibited the Class A Members and Managers from opening new bank accounts in the name of Vinamex without the knowledge and approval of the Class B Manager. Despite this prohibition, Chhor and/or Nguyen opened up an account at Bank of America ("BofA") to deposit rent payments made by the subtenants. Chhor and/or Nguyen did this despite the fact that the Revenue Account was opened in part to collect any and all revenue generated by Vinamex. In addition, Chhor opened up a merchant account at BofA in his own name (instead of in the name of Vinamex) to handle point of sale transactions. For obvious reasons, Chhor never linked the merchant account to the Revenue Account so that funds could be transferred from the BofA merchant account to the Revenue Account.  A&J Capital, the Class B Manager, had online access to the Revenue Account. Had Chhor linked the BofA merchant account to the Revenue Account, A&J Capital likely would have discovered the existence of the merchant account.

**Chhor And Nguyen Are Removed As Members Of Vinamex And As Day To Day Managers**

59.    In or about January 2015, Duong learned that Chhor and Nguyen had not made their capital contributions to Vinamex, and had reason to believe that Chhor and Nguyen had mismanaged the construction of the supermarket and had embezzled money from Vinamex. On February 6, 2015, Duong noticed a special meeting of the members of Vinamex for the purpose of removing Chhor and Nguyen: (a) as Class A Members due to their failure to make their capital contributions; and (b) as day to day managers of the supermarket due to their malfeasance. The meeting was held on February 10 and 12, 2015. Chhor and Nguyen were removed as members and day to day operators of the supermarket. After receiving the February 6 notice but before the February 10 meeting, Chhor feared the obvious: that is that he would soon be removed from the day to day operation of Vinamex and be blocked from accessing Vinamex funds. So, he wrote a check to himself for $250,000. On February 6, 2015 (the date notice of the special meeting was given), Vinamex advised East West Bank that funds in Vinamex's accounts should be frozen until further notice. Had Vinamex not taken the precautionary measure, Chhor no doubt would have completed his scheme to misappropriate an additional $250,000 from Vinamex.

60.    On February 15, 2015, Vinamex made written demand on Chhor and Nguyen to return all property of Vinamex, including bank accounts, to Vinamex. Despite this demand, Chhor and Nguyen failed to make arrangements for control of Vinamex's merchant account to be transferred to Duong and A&J Capital. Nor did they return EB-5 funds they misappropriated from Vinamex.

**A&J Capital Gave Free Reign Over the Revenue and Buildout Account to Chhor**

61.    As noted previously, the Bank Accounts Governance Agreement required dual signatures from the Class A and Class B Managers in order to control the use of funds from the Cash Control Account and the Revenue Account. A&J Capital assigned Ming Yu ("Yu") to represent the Class B Manager. According to Chhor, Yu discharged A&J Capital's duties to co-sign checks under the Operating Agreement, the Management Agreement and the Agency Agreement in the following fashion. Chhor would bring 10 to 20 "blank checks" to Yu in Alhambra, Yu would sign the blank checks and Chhor would take the blank checks signed by Yu back to Garden Groves. When Chhor needed to use a check, he then would fill out the check and add his signature (the Class A Member

1  signature) to the check. According to Chhor, Yu never questioned this practice or expressed concerns

2  about the use of funds from the checks.

3      62.    Yu also had online access to the Cash Control Account and the Revenue Account. He

4  also had the authority to examine Vinamex's books and records at any time. Yet, he apparently failed

5  to monitor the disbursement of funds despite the fact that he had the ability to do so through his online

6  access and/or an examination of Vinamex's books and records.

7      63.    As a result of A&J Capital's failure to properly discharge its fiduciary and contractual

8  duties, the misconduct of Chhor and Nguyen went unchecked until in or about February 2015,

9  resulted in the misuse of hundreds of thousands of Vinamex dollars and ultimately left Vinamex with

10  insufficient start-up funds to operate the supermarket. And, under the Management Agreement, Pan-

11  Asia is liable for the malfeasance of its assignee – here, A&J Capital.

12      64.    Accordingly, by this lawsuit, the Vinamex Assignee seeks redress against defendants

13  for compensatory damages, including loss profits, in an amount subject to proof at trial but is alleged

14  to exceed $5,000,000, punitive damages where appropriate and warranted and reimbursement of costs

15  herein.

16                   **FIRST CLAIM FOR RELIEF**

17       (For Breach of Operating Agreement Against Defendants Chhor and Nguyen)

18      65.    Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through

19  64, inclusive.

20      66.    On or about January 14, 2014, Chhor and Nguyen entered into the Operating

21  Agreement with other members of Vinamex.

22      67.    Vinamex has performed all of the conditions, covenants, and promises under the

23  Operating Agreement that it was required to perform, except for any parts that it was excused from

24  performing as a result of conduct of Chhor, Nguyen and others.

25      68.    Chhor and Nguyen breached the Operating Agreement by, among other things,

26  engaging in the conduct set forth.

27      69.    As a direct and proximate result of the actions of Chhor and Nguyen, Plaintiff has been

28  damaged in an amount that is uncertain but is alleged to exceed $5,000,000 (excluding interest).

**SECOND CLAIM FOR RELIEF**

(For Breach of Fiduciary Duty Against Defendants Chhor and Nguyen)

70.     Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through 64, inclusive.

71.     The Operating Agreement expressly placed fiduciary duties of care and loyalty on Chhor and Nguyen. As managers of Vinamex, Chhor and Nguyen owed Vinamex common law duties of care and loyalty.

72.     Chhor and Nguyen breached the Operating Agreement by, among other things, engaging in the conduct set forth above.

73.     As a direct and proximate result of the actions of Chhor and Nguyen, Plaintiff has been damaged in an amount that is uncertain but is alleged to exceed $5,000,000 (excluding interest).

74.     Chhor and Nguyen engaged in oppression, fraud or malice, and an award of punitive damages against them is therefore appropriate

**THIRD CLAIM FOR RELIEF**

(For Conversion Against Defendants Chhor and Nguyen)

75.     Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through 64, inclusive.

76.     Chhor and Nguyen had a right of access to the Cash Control Account and Revenue and Build-Out Operating Account in which EB-5 funds were to be deposited.

77.     Chhor and Nguyen caused EB-5 funds that were to be moved from the Cash Control Account to the Revenue Build-Out Operating Account to be diverted into an account in the name of ABC Construction but controlled by Nguyen.  Once in the ABC Construction Account, Chhor and Nguyen then converted the funds for their own use instead of for the use of Vinamex.

78.     In addition, Chhor and Nguyen took deposits from prospective tenants of the retail space. However, rather than depositing tenant deposits into the Revenue Build-Out Operating Account as required by the Aggregate Accounts Governance Agreement, Chhor and Nguyen deposited the deposits into an account or accounts controlled by them.

79.     Vinamex did not consent to the actions of Chhor and Nguyen. Indeed, Vinamex has demand that Chhor and Nguyen return the funds to Vinamex. However, to date, Chhor and Nguyen have failed and refused to return said funds.

80.     As a direct and proximate result of the actions of Chhor and Nguyen, Plaintiff has been damaged in the amount that is uncertain but is alleged to exceed $500,000 (excluding interest).

81.     Chhor and Nguyen engaged in oppression, fraud or malice, and an award of punitive damages against them is therefore appropriate.

## **FOURTH CLAIM FOR RELIEF**

(For Recovery Of Improper Use Of Funds Under Bankruptcy Code Sections 544 and 548 and California Law Against Defendants Chhor and Nguyen)

82.     Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through 64, inclusive.

83.     Vinamex did not receive adequate consideration for: (a) loans Chhor and Nguyen caused Vinamex to make to them; and (b) funds belonging to Vinamex that Chhor and Nguyen misappropriated for their own personal use.

84.     On the dates that Chhor and Nguyen caused Vinamex to make these payments, Vinamex's remaining capital and assets were unreasonably small for its business and/or Chhor and Nguyen knew, or should have known, that Vinamex would incur debts beyond its ability to pay as they matured.

85.     Chhor and Nguyen caused Vinamex to make these loans and/or to otherwise make payments to Chhor and Nguyen with the intent to hinder, delay and defraud creditors.

86.     These payments were constructively fraudulent under 11 U.S.C. Section 548 in that, among other things, Vinamex made the payments and transfers for the benefit of insiders (Chhor and Nguyen) or incurred such obligations to or for the benefit of insiders (Chhor and Nguyen), and not in the ordinary course of business.

87.     The receipt by Chhor and Nguyen of the improper payments are subject to avoidance and recovery under Bankruptcy Code Section 544 and 548 and the applicable provisions of California

1 | Civil Code Section 3439.01 and 3439.12 concerning fraudulent or otherwise void or voidable

2 | obligations, conveyances and transfers.

3 |     88.    By reason of the foregoing, Plaintiff is entitled to recover the transfers, or the value of

4 | such transfers, if the Court so orders, pursuant to 11 U.S.C. Section 550 and applicable state law.

5 |     89.    Chhor and Nguyen engaged in oppression, fraud or malice, and an award of punitive

6 | damages against them is therefore appropriate.

7 | **FIFTH CLAIM FOR RELIEF**

8 | (For Money Had and Received Against Defendants Chhor and Nguyen)

9 |     90.    Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through

10 | 64, inclusive.

11 |     91.    Prior to February 2015, Chhor and Nguyen had signatory rights on the Cash Control

12 | Account and the Revenue and Build-Out Operating Account of Vinamex. EB-5 and other funds were

13 | deposited into these accounts. At the time the accounts received the deposits, Chhor and Nguyen had

14 | an obligation to use the deposits for the benefit of Vinamex. Chhor and Nguyen were aware of this

15 | obligation. Nevertheless, Chhor and Nguyen used a portion of said funds for personal business

16 | reasons.

17 |     92.    As a direct and proximate result of the actions of Chhor and Nguyen, Plaintiff has been

18 | damaged in the amount that is uncertain but is alleged to exceed $500,000 (excluding interest).

19 | **SIXTH CLAIM FOR RELIEF**

20 | (For Turnover of Property Defendants Chhor and Nguyen – 11 U.S.C. §542)

21 |     93.    Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through

22 | 64, inclusive.

23 |     94.    To the extent Plaintiff is successful in avoiding any transfers to Chhor and Nguyen, the

24 | property constitutes property of the estate pursuant to 11 U.S.C. § 541.

25 |     95.    Plaintiff is informed and believes and based upon such information and belief alleges

26 | that Chhor and Nguyen are in possession of funds they received as loans from Vinamex.

27 |     96.    The funds should be turned over to Plaintiff pursuant to 11 U.S.C. § 542.

28 |

**SEVENTH CLAIM FOR RELIEF**

(For Breach of Operating Agreement Against Defendants A&J Capital and Pan-Asia)

97.    Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through 64, inclusive.

98.    Pan-Asia and Vinamex entered into a Management Agreement effective as of March 26th, 2014, pursuant to which Pan-Asia: (a) agreed to be designated as the Class B Manager under the Operating Agreement; and (b) separately agreed "to provide financial administrative and certain advisory services to [Vinamex]."  The administrative and advisory services that Pan-Asia agreed to provide Vinamex included but were not limited: (a) to "manage and monitor the operation of the business, property, and affairs of [Vinamex] in accordance with the Operating Agreement"; (b) to "monitor the disbursement of funds from [Vinamex's] bank accounts"; (c) to review and approve budgets ; and (d) to "train and manage [Pan-Asia's] employees with regard to, and enforce, the rules and policies, as defined in the [Management] Agreement."  The Management Agreement authorized Pan-Asia to "delegate its functions, powers, discretions, privileges and duties under the Agreement or the Operating Agreement to any person including any of its affiliates…" However, Pan-Asia remained responsible for any act or omission of such officer or employee or agent to which it delegated its rights and obligations.

99.    On April 21, 2014, A&J Capital and Pan-Asia signed an Agency Agreement with Pan-Asia through which A&J Capital agreed to provide Vinamex various services, including but not limited: (a) to "manage and monitor the operation of the business, property, and affairs of [Vinamex] in accordance with the Operating Agreement"; (b) to "monitor the disbursement of funds from [Vinamex's] bank accounts"; (c) to review and approve budgets; and (d) to "train and manage [Pan-Asia's] employees with regard to, and enforce, the rules and policies, as defined in the [Management] Agreement."

100.    Vinamex has performed all of the conditions, covenants, and promises under the Operating Agreement that it was required to perform, except for any parts that it was excused from performing as a result of conduct of A&J Capital and Pan-Asia.

1      101.    A&J Capital and Pan-Asia breached the Operating Agreement by, among other things,

2    engaging in the conduct set forth.

3      102.    As a direct and proximate result of the actions of A&J Capital and Pan-Asia, Plaintiff

4    has been damaged in an amount that is uncertain but is alleged to exceed $5,000,000 (excluding

5    interest).

6                                    **EIGHTH CLAIM FOR RELIEF**

7                  (For Breach of Fiduciary Duty Against Defendants A&J Capital and Pan-Asia)

8      103.    Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through

9    64, inclusive.

10      104.    The Operating Agreement expressly placed fiduciary duties of care and on the Class B

11   Manager. Pan-Asia and Vinamex entered into the Management Agreement, through which Pan-Asia

12   was designated as the Class B Manager. The Management Agreement permitted Pan-Asia to assign its

13   rights and obligations to a third party. However, through executing the Management Agreement, Pan-

14   Asia agreed to remain liable in the event that it opted to assign its rights and obligations under the

15   Management Agreement. Pan-Asia assigned its rights and obligations under the Management

16   Agreement to A&J Capital.

17      105.    A&J Capital and Pan-Asia breached their fiduciary duties of care to Vinamex by,

18   among other things, engaging in the conduct set forth.

19      106.    As a direct and proximate result of the actions of A&J Capital and Pan-Asia, Plaintiff

20   has been damaged in an amount that is uncertain but is alleged to exceed $5,000,000 (excluding

21   interest).

22                                    **NINTH CLAIM FOR RELIEF**

23                  (For Breach of Management Agreement Against Defendants A&J Capital and Pan-Asia)

24      107.    Plaintiff incorporates herein by this reference the allegations of paragraphs 1 through

25   64, inclusive.

26      108.    Pan-Asia and Vinamex entered into a Management Agreement effective as of March

27   26th, 2014, pursuant to which Pan-Asia: (a) agreed to be designated as the Class B Manager under the

28   Operating Agreement; and (b) separately agreed "to provide financial administrative and certain

22

advisory services to [Vinamex]."  The administrative and advisory services that Pan-Asia agreed to provide Vinamex included but were not limited: (a) to "manage and monitor the operation of the business, property, and affairs of [Vinamex] in accordance with the Operating Agreement"; (b) to "monitor the disbursement of funds from [Vinamex's] bank accounts"; (c) to review and approve budgets; and (d) to "train and manage [Pan-Asia's] employees with regard to, and enforce, the rules and policies, as defined in the [Management] Agreement."  The Management Agreement authorized Pan-Asia to "delegate its functions, powers, discretions, privileges and duties under the Agreement or the Operating Agreement to any person including any of its affiliates…" However, Pan-Asia remained responsible for any act or omission of such officer or employee or agent to which it delegated its rights and obligations.

109.    On April 21, 2014, A&J Capital and Pan-Asia signed an Agency Agreement with Pan-Asia through which A&J Capital agreed to provide Vinamex various services, including but not limited: (a) to "manage and monitor the operation of the business, property, and affairs of [Vinamex] in accordance with the Operating Agreement"; (b) to "monitor the disbursement of funds from [Vinamex's] bank accounts"; (c) to review and approve budgets; and (d) to "train and manage [Pan-Asia's] employees with regard to, and enforce, the rules and policies, as defined in the [Management] Agreement."

110.    Vinamex has performed all of the conditions, covenants, and promises under the Operating Agreement that it was required to perform, except for any parts that it was excused from performing as a result of conduct of A&J Capital and Pan-Asia.

111.    A&J Capital and Pan-Asia breached the Operating Agreement by, among other things, engaging in the conduct set forth.

112.    As a direct and proximate result of the actions of A&J Capital and Pan-Asia, Plaintiff has been damaged in an amount that is uncertain but is alleged to exceed $5,000,000 (excluding interest).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.    For compensatory damages in an amount according to proof at trial but is alleged to exceed $5,500,000;

2.    For consequential and special damages in an amount according to proof at trial;

3.    For punitive damages in an amount according to proof at trial;

4.    For restitution, according to proof at trial;

5.    For a constructive trust, according to proof at trial;

6.    For avoidance of all transfers pursuant to 11 U.S.C. 544, 548 and 550, as well as California Civil Code Section 3439.01 and 3439.12;

7.    For a judgment compelling turnover of property pursuant to 11 U.S.C. 542;

8.    For interest on all awards in the maximum amount allowed by law;

9.    For reasonable attorneys' fees if available by law;

10.    For costs of suit herein; and

11.    For such other and further relief as this Court may deem just and proper.


DATED:   May 15, 2017                     Respectfully submitted,
                                          **DCDM LAW GROUP, PC**


                                          By:  ___/s/ Dheeraj K. Singhal_____
                                               DHEERAJ SINGHAL
                                               Attorneys for Plaintiff
                                               ASSIGNEE OF VINAMEX SUPERMARKET
                                               BANKRUPTCY CLAIMS LLC

COMPLAINT

1

## JURY TRIAL DEMAND

2          Plaintiff requests a trial by jury of all issues that are triable to a jury in this case.

3

4     DATED:   May 15, 2017                 Respectfully submitted,
                                            **DCDM LAW GROUP, PC**
5

6
                                            By:  ___/s/ Dheeraj K. Singhal_____
7                                                DHEERAJ K. SINGHAL
                                                 ROBERT M. GILCHREST
8                                                Attorneys for Plaintiff
                                                 ASSIGNEE OF VINAMEX SUPERMARKET
9                                                BANKRUPTCY CLAIMS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT